UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT TACOMA

DAVID C.,

              Plaintiff,

v.

COMMISSIONER OF SOCIAL SECURITY,

              Defendant.

Case No. 2:22-cv-00205

ORDER REVERSING AND REMANDING DEFENDANT'S DECISION TO DENY BENEFITS

Plaintiff has brought this matter for judicial review of defendant's denial of their application for Title II disability insurance benefits. Plaintiff filed their application on May 10, 2019, alleging a disability onset date of February 10, 2018. AR 80-182. After a hearing on January 7, 2021, before Administrative Law Judge (ALJ) Glenn Meyers, AR 37-78, the ALJ issued a decision on February 3, 2021 and found that plaintiff would be able to perform his past work, and was not disabled. AR 16-31. The Appeals Council denied review. AR 1-3.

The parties have consented to have this matter heard by the undersigned Magistrate Judge. 28 U.S.C. § 636(c); Federal Rule of Civil Procedure 73; Local Rule MJR 13.

I.    ISSUES FOR REVIEW

A. Did the ALJ's decision lack substantial evidence, or depart from legal requirements, when making the determination of Residual Functional Capacity,

1

the application of Step Four criteria, and review of medical evidence concerning plaintiff's mental health conditions?

## II. DISCUSSION

### A. Legal Framework

The Court will uphold an ALJ's decision unless: (1) the decision is based on legal error, or (2) the decision is not supported by substantial evidence. *Revels v. Berryhill,* 874 F.3d 648, 654 (9th Cir. 2017). Substantial evidence is "'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Biestek v. Berryhill,* 139 S. Ct. 1148, 1154 (2019) (quoting *Consolidated Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938)). This requires "more than a mere scintilla," of evidence. *Id.*

The Commissioner uses a five-step sequential evaluation process to determine if a claimant is disabled. 20 C.F.R. § 416.920. The ALJ assesses the claimant's RFC to determine, at step four, whether the plaintiff can perform past relevant work, and if necessary, at step five to determine whether the plaintiff can adjust to other work. *Kennedy v. Colvin*, 738 F.3d 1172, 1175 (9th Cir. 2013). The claimant has the burden of proof at step four to show they do not have the RFC to perform the requirements of past relevant work. 20 C.F.R. § 404.1520(e), (f) *Pinto v. Massanari,* 249 F.3d 840, 844 (9th Cir. 2001).

The ALJ has the burden of proof at step five to show that a significant number of jobs that the claimant can perform exist in the national economy. *Tackett v. Apfel*, 180 F.3d 1094,1099 (9th Cir. 1999); 20 C.F.R. § 416.920(e).

The instant case pertains to step four. At step four, "[p]ast work experience must be considered carefully to assure that the available facts support a conclusion regarding the claimant's ability or inability to perform the functional activities required in [their past

work]." SSR 82-62, *Titles II & XVI: A Disability Claimant's Capacity to Do Past Relevant Work, in General*, (Jan. 1, 1982). If the record shows the individual is able to perform their past work, the Commissioner will find they are not disabled. 20 C.F.R. § 416.920(e).

The determination of whether the plaintiff has an RFC that would support a finding that they are able to do their past relevant work requires the ALJ to fully investigate and conduct "a careful appraisal of (1) the individual's statements as to which past work requirements can no longer be met and the reasons(s) for his or her inability to meet those requirements; (2) medical evidence establishing how the impairment limits ability to meet the physical and mental requirements of the work; and (3) in some cases, supplementary or corroborative information from other sources such as employers, the *Dictionary of Occupational Titles*, etc., on the requirements of the work as generally performed in the economy." SSR 82-62 at *3. The DOT is the presumptive authority regarding the manner in which a particular job is generally performed. *Johnson v. Shalala,* 60 F.3d 1428, 1435 (9th Cir. 1995).

Even though the claimant has the burden of proof to show they can no longer perform the requirements of past relevant work, "the ALJ still has a duty to make the requisite factual findings to support [their] conclusion." *Pinto v. Massanari,* 249 F.3d 840, 844 (9th Cir. 2001). When a finding is made that an individual is capable of performing relevant past work, the decision must contain findings of fact:

"1. A finding of fact as to the individual's RFC. 2. A finding of fact as to the physical and mental demands of the past job/occupation. 3. A finding of fact that the individual's RFC would permit a return to his or her past job or occupation." SSR 82-62

at *4. And, "[t]he decision as to whether the claimant retains the functional capacity to perform past work which has current relevance has far-reaching implications and must be developed and explained fully in the disability decision. *Id*., at *3. Since this is an important and, in some instances, a controlling issue, every effort must be made to secure evidence that resolves the issue as clearly and explicitly as circumstances permit." *Id.*

The Court must consider the administrative record as a whole. *Garrison v. Colvin,* 759 F.3d 995, 1009 (9th Cir. 2014). It must weigh both the evidence that supports, and evidence that does not support, the ALJ's conclusion. *Id.* The Court considers in its review only the reasons the ALJ identified and may not affirm for a different reason. *Id.* at 1010. Furthermore, "[l]ong-standing principles of administrative law require us to review the ALJ's decision based on the reasoning and actual findings offered by the ALJ—not post hoc rationalizations that attempt to intuit what the adjudicator may have been thinking." *Bray v. Comm'r of SSA*, 554 F.3d 1219, 1225-26 (9th Cir. 2009) (citations omitted).

If the ALJ's decision is based on a rational interpretation of conflicting evidence, the Court will uphold the ALJ's finding. *Carmickle v. Comm'r of Soc. Sec. Admin.,* 533 F.3d 1155, 1165 (9th Cir. 2008). It is unnecessary for the ALJ to "discuss *all* evidence presented". *Vincent on Behalf of Vincent v. Heckler*, 739 F.2d 1393, 1394-95 (9th Cir. 1984) (citation omitted) (emphasis in original). The ALJ must only explain why "significant probative evidence has been rejected." *Id.*

The Commissioner "will not defer or give any specific evidentiary weight . . . to any medical opinion(s) . . . including those from [the claimant's] medical sources." 20 C.F.R.

§§ 404.1520c(a), 416.920c(a). The ALJ must nonetheless explain with specificity how they considered the factors of supportability and consistency in evaluating the medical opinions. 20 C.F.R. §§ 404.1520c(a)–(b), 416.920c(a)–(b).

The Ninth Circuit considered the 2017 regulations in *Woods v. Kijakazi*, 32 F.4th 785 (9th Cir. 2022). Under the 2017 regulations,

> an ALJ cannot reject an examining or treating doctor's opinion as unsupported or inconsistent without providing an explanation supported by substantial evidence. The agency must "articulate ... how persuasive" it finds "all of the medical opinions" from each doctor or other source, 20 C.F.R. § 404.1520c(b), and "explain how [it] considered the supportability and consistency factors" in reaching these findings, *id.* § 404.1520c(b)(2).

*Id.* "Even under the new regulations, an ALJ cannot reject an examining or treating doctor's opinion as unsupported or inconsistent without providing explanation supported by substantial evidence." *Id*. at 792.

Although the ALJ's analysis need not be extensive, the ALJ must provide some reasoning allowing the Court to meaningfully evaluate whether the conclusion is supported by substantial evidence. *Brown-Hunter v. Colvin*, 806 F.3d 487, 494-95 (9th Cir. 2015); *Treichler v. Comm'r of SSA*, 775 F.3d 1090, 1103 (9th Cir. 2014).

An error is harmless only if it is not prejudicial to the claimant or "inconsequential" to the ALJ's "ultimate nondisability determination." *Stout v. Comm'r Soc. Sec. Admin.*, 454 F.3d 1050, 1055 (9th Cir. 2006).

> B. <u>The ALJ harmfully erred regarding the medical opinions relating to plaintiff's mental health limitations; the ALJ's determination of the RFC was not supported by substantial evidence</u>

Plaintiff asserts that the ALJ's decision fails to explain their reasoning with respect to plaintiff's bipolar disorder, and therefore does not meet the requirements of

5

*Woods v. Kijakazi*, 32 F.4th 785 (9th Cir. 2022). In addition, plaintiff asserts the ALJ made their own medical assessment of plaintiff based on the underlying medical record and in doing so, rejected medical evidence provided by experts rather than properly interpreting the evidence; according to plaintiff, this violated the Ninth Circuit's precedent concerning the ALJ's role in making findings of fact relating to medical evidence. See Dkt. 10, Opening Brief at 9-12.

Defendant argues the ALJ's assessment of supportability and consistency of the psychological consultants' opinions was sufficient. Dkt. 11 at 4-7.

An ALJ is prohibited from interpreting raw medical data; times where symptoms wax and wane are typical of many mental conditions, and should not be interpreted as sustained improvement unless a medical professional has provided such an interpretation. *See Garrison v. Colvin,* 759 F.3d 995, 1013-1014, 1017-1018 (9th Cir. 2014) (ALJ must explain why their interpretation, rather than the medical professional's interpretation of plaintiff's limitations, is accurate); *Day v. Weinberger,* 522 F.2d 1154, 1156 (9th Cir. 1975) (ALJ is not a medical expert and may not interpret medical facts to explore and assess plaintiff's medical condition, and thereby reject other interpretations that are part of a medical assessment in the record); *Nguyen v. Chater,* 172 F.3d 31 (1st Cir. 1999) (ALJ is legally prohibited from interpreting raw medical data).

The ALJ found plaintiff had the severe impairments of "myofascial pain from injuries to his neck, bilateral knees, and hands; sciatica; and bipolar disorder". AR 18. Regarding the mental health evidence, the ALJ determined that none of the opinions of the psychological consultants were persuasive. AR 24-26, 28-29. The ALJ determined at step four that plaintiff could perform past relevant work – short-order cook, which is

semi-skilled with an SVP 3. AR 29-30. The ALJ found this past work would be consistent with plaintiff's mental Residual Functional Capacity (RFC), which the ALJ described as, "capable of engaging in mental activity equal to that required in the performance of jobs at the lowest semi-skilled level". *See* 20 CFR § 404.1565.

The ALJ found (AR 24, 28) that Dr. Fowler's opinion was internally inconsistent and conclusory. Dkt. 11 at 4. The ALJ also found (AR 28-29) that the administrative review findings of Dr. Gollogly and Dr. Eisenhauer, were unpersuasive for the same reasons that Dr. Fowler's opinion was unsupported and inconsistent. Dkt. 11 at 6. Therefore the primary underlying medical record considered by the ALJ was the report of Dr. Fowler's appointment with plaintiff on August 4, 2019. AR 324-328. Dr. Gollogly and Dr. Eisenhauer based their opinions on their review of analysis of Dr. Fowler. AR 88-89, 98-105.

The ALJ found that plaintiff's testimony was not fully consistent with the medical record, but the ALJ nevertheless relied on plaintiff's testimony about plaintiff's work as a short-order cook at Sound Soups, to make an evaluation at step four.

The ALJ asked plaintiff during the hearing about plaintiff's work at Sound Soups during 2009-2010. AR 54-56. Plaintiff stated that he worked there part time, "made all the soups in the morning. . . and served it". AR 55-56. Plaintiff stated that he also worked at the cash register. AR 57.

Plaintiff was asked whether, when he worked at Sound Soups, he had contact with customers, co-workers, or supervisors. AR 57, 77. Plaintiff testified that he served soup to customers, and that he had one co-worker and also worked with the owner/supervisor when plaintiff was the cashier. AR 56, 77.

When asked by counsel about whether he took medication for mental health conditions, plaintiff explained that he stopped taking the medications because of side effects that caused involuntary movement in his legs – he found the side effects to be more frightening than the bipolar symptoms. AR 62-64, 71-72. Plaintiff also stated that he had mood swings, he was short tempered and irritable, felt depressed and negative, has trouble keeping track of things and difficulty concentrating, and has difficulty engaging with other people because he acts angrily or aggressively. AR 65-68. Plaintiff responded to a question posed by the ALJ about whether any counseling had occurred to treat plaintiff's mental health conditions; plaintiff testified he did attend counseling but stopped because he felt it was not doing much good, and he is extremely negative. AR 70. Plaintiff also testified that he was trying to get back into counseling and obtain medications, but was finding it daunting because of the COVID-19 pandemic. AR 71.

The ALJ asked the Vocational Expert (VE) during the hearing whether frequent contact with customers, co-workers, or supervisors, would be required in the position of short-order cook. AR 76. The VE identified short order cook as DOT #313.374-014, SVP 3, semi-skilled, and testified that public contact and co-worker contact would be frequent; contact with supervisors would be occasional. AR 73-74, 76. The VE explained that the SVP of 3 means it would require 30 days to three months to learn the job. AR 74.

Dr. Fowler examined plaintiff at a clinic and reviewed plaintiff's medical records. AR 324. Dr. Fowler found that plaintiff would be unlikely to maintain regular attendance in the workplace. AR 328. And, Dr. Fowler determined that it would be "unlikely that the claimant would successfully adapt to typical workplace stresses" because of limited

adaptability. AR 328.

Reviewing the assessment of Dr. Fowler, Dr. Gollogly determined that plaintiff had moderate limitations for ability to carry out detailed instructions, ability to maintain attention and concentration for extended periods, and ability to complete a normal workday and workweek without interruptions from psychologically based symptoms and to perform at a consistent pace without an unreasonable number and length of rest periods. AR 88-89. Dr. Gollogly found plaintiff would be capable of understanding, carrying out, and recalling short, simple instructions. AR 89.

Dr. Gollogly also found moderate limitations in social interaction capacities – that plaintiff would be able to work in an independent work setting with only "quick and short social demands/interaction with the general public and coworker", and plaintiff would be able to ask and accept simple instructions while interacting with a supervisor. AR 89. And, Dr. Gollogly found moderate limitations for plaintiff's ability to respond to changes in the work setting; that plaintiff "would be able to work in a setting which is predictable with routine work changes." *Id.*

Dr. Eisenhauer reviewed the opinion of Dr. Gollogly and agreed that plaintiff was moderately limited in the ability to carry out detailed instructions, the ability to maintain attention and concentration for extended periods, the ability to complete a normal workday and workweek without interruptions from psychologically based symptoms and to perform at a consistent pace without an unreasonable number and length of rest periods, and the ability to respond appropriately to changes in the work setting. AR 102.

A claimant's RFC is what the claimant "can still do despite [their] limitations." SSR 96-8p, *Titles II & XVI: Assessing Residual Functional Capacity in Initial Claims*,

(July 2, 1996). A claimant's residual functional capacity assessment is used at step four to determine whether he or she can do his or her past relevant work, and at step five to determine whether they can do other work. *Id*. "Ordinarily, RFC is an assessment of an individual's ability to do sustained work-related physical and mental activities in a work setting on a regular and continuing basis." SSR 96-8p at * 1. "A 'regular and continuing basis means 8 hours a day, for 5 days a week, or an equivalent work schedule." *Id*. If the RFC conflicts with an opinion from a medical source, the ALJ must explain why the opinion was not adopted. *See* SSR 96-8p.

With respect to mental health conditions, the ALJ is required to consider – at step two, and then again during the evaluation of the RFC, a special psychiatric review technique (PRT) in their decision. *Keyser v. Comm'r,* 648 F.3d 721, 725 (9th Cir. 2011). This PRT analysis is described in 20 C.F.R. § § 404.1520a, and 916.920a (as revised in 2017).

In this case, plaintiff had one examination-based assessment, by Dr. Fowler, of their mental health condition and work-related limitations, and two reviews – by Dr. Gollogly, and Dr. Eisenhauer – of Dr. Fowler's assessment and opinions. The ALJ was only required to include a limitation in the RFC if the limitation was supported by substantial medical evidence in the record, however an ALJ is not allowed to disregard limitations that are supported by substantial evidence. *Robbins v. Social Sec. Admin.,* 466 F.3d 880, 886 (9th Cir. 2006).

The ALJ found Dr. Fowler's, Dr. Gollogly's, and Dr. Eisenhauer's opinions to be unpersuasive. Yet the basis for the "unpersuasive" finding is not explained, other than stating that Dr. Fowler made conclusory, inconsistent determinations. Dr. Fowler stated

they reviewed the available medical records, and conducted an appointment –
evaluating plaintiff's mental health based on plaintiff's subjective reports, the medical records, and a mental status examination.

The ALJ erroneously concluded that plaintiff had not received any treatment before being evaluated in 2019 by Dr. Fowler. AR 24, 26. This finding is not supported by substantial evidence. Plaintiff had been seen for bipolar disorder before 2019, and also after the appointment with Dr. Fowler. *See, e.g.*, AR 297, appointment with Kathryn Stanley ARNP on 10-13-2016, notes bipolar disorder with onset date 9-5-2014, chronic; AR 351-363, appointment with PA-C Julie Conklin on 8-29-2019, notes "bipolar disorder in partial remission" but "insufficient time to address today", "[a]t end of 30 minute visit, mentions he is considering restarting medication for bipolar disorder", notes psych consultations in 2014 and 2015, also notes, "last visit in 2017"; AR 363, notes depression severity, moderate, and with major depression criteria of 5+ symptom and disability met; AR 364-366, 440-448, 449-456, 468, follow up notes by MSW Molly Engle and ARNP Mary Micikas, notes that plaintiff was worried about medications for psychological conditions because of prior bad experience with medications.

And, the ALJ's observation that plaintiff had not pursued treatment is contrary to the legal principle that the ALJ is required to consider reasons, such as side effects or inability to pay for treatment, that may cause an individual to forgo or delay obtaining help from physicians or counsellors. *See Orn v. Astrue,* 495 F.3d 625, 638 (9th Cir. 2007). Moreover, the ALJ made statements about specific underlying observations made during Dr. Fowler's examination of plaintiff, suggesting the ALJ was relying on raw data gathered by the medical professional during the examination rather than

merely drawing reasonable inferences when interpreting Dr. Fowler's assessment. *See, e.g.*, AR 28 ("claimant exhibited some agitation, pressured and tangential speech, and variability of affect, but he nonetheless cooperated and performed most cognitive tasks normally. . .")

Because the ALJ's findings -- that Dr. Fowler's assessment is conclusory or internally inconsistent – are not supported by the record, and Dr. Fowler's assessment was supported by the examination and evaluation of plaintiff – and upheld by the reviews by Dr. Gollogly and Dr. Eisenhauer (who reviewed the opinion of Dr. Gollogly), there were uncontradicted opinions that plaintiff had moderate work-related limitations. Also, the ALJ made a finding that plaintiff had at least one moderate limitation regarding his ability to concentrate, persist or maintain pace. AR 20. Yet none of these moderate limitations were included in the RFC. The ALJ did not ask a hypothetical that included any work-related mental health limitations. *See* AR 75. The ALJ only listed in the hypothetical that the individual would be "capable of engaging in mental activity equal to that required in jobs performed at the lowest semi-skilled level". AR 75.

The ALJ did not properly assess step four, because the job of short-order cook was more demanding than limitations based on plaintiff's mental health conditions would allow. As plaintiff testified, the short-order cook position required that he interact with a co-worker and supervisor, and it involved contact with the public. According to DOT #313.374-014, 1991 WL 672717, Dictionary of Occupational Titles, Fourth Edition (Revised 1991), the reasoning level three means the individual must be able to "[a]pply common sense understanding to carry out instructions furnished in written, oral, or diagrammatic form. Deal with problems involving several concrete variables in or from

standardized situations."

Dr. Eisenhauer and Dr. Gollogly (based on Dr. Fowler's evaluation) found plaintiff was moderately limited in the ability to carry out detailed instructions, the ability to maintain attention and concentration for extended periods, and the ability to complete a normal workday and workweek without interruptions from psychologically based symptoms and to perform at a consistent pace without an unreasonable number and length of rest periods, and the ability to respond appropriately to changes in the work setting. AR 102. In addition, the record shows plaintiff worked part-time in the Sound Soups position during 2009-2010. The RFC is intended to measure what a person would be able to do currently as a full-time employee. Thus, the record does not support the use of the short-order cook position as described in the DOT, to assess plaintiff's RFC, because the position as performed full-time would be much more demanding, and therefore was not comparable to the way plaintiff experienced and performed that work in 2009-2010 as a part-time employee.

The ALJ did not follow the guidance of *Woods v. Kijakazi*, 32 F.4th 785 (9th Cir. 2022), and the Court cannot accept a general finding and comb the administrative record to find the conflict. *Brown-Hunter v. Colvin*, 806 F.3d 487, 494 (9th Cir. 2015). The ALJ did not have substantial evidence of any internal inconsistency or other medical records that would contradict Dr. Fowler's opinion. And the error was harmful, because the ALJ failed to include in the hypothetical to the Vocational Expert any work-related mental limitations supported by substantial evidence. *See Pinto*, 249 F.3d at 847. A proper evaluation of Dr. Fowler's opinion, along with Dr. Gollogly's and Dr.

Eisenhauer's opinions, and any new evidence presented, could potentially change the hypotheticals posed to the vocational expert and could change the RFC determination.

### C. Remand With Instructions for Further Proceedings

"'The decision whether to remand a case for additional evidence, or simply to award benefits[,] is within the discretion of the court.'" *Trevizo v. Berryhill*, 871 F.3d 664, 682 (9th Cir. 2017) (quoting *Sprague v. Bowen*, 812 F.2d 1226, 1232 (9th Cir. 1987)). If an ALJ makes an error and the record is uncertain and ambiguous, the court should remand to the agency for further proceedings. *Leon v. Berryhill*, 880 F.3d 1041, 1045 (9th Cir. 2017). Likewise, if the court concludes that additional proceedings can remedy the ALJ's errors, it should remand the case for further consideration. *Revels*, 874 F.3d at 668.

The Ninth Circuit has developed a three-step analysis for determining when to remand for a direct award of benefits. Such remand is generally proper only where

> "(1) the record has been fully developed and further administrative proceedings would serve no useful purpose; (2) the ALJ has failed to provide legally sufficient reasons for rejecting evidence, whether claimant testimony or medical opinion; and (3) if the improperly discredited evidence were credited as true, the ALJ would be required to find the claimant disabled on remand."

*Trevizo*, 871 F.3d at 682-83 (quoting *Garrison v. Colvin*, 759 F.3d 995, 1020 (9th Cir. 2014)).

The Ninth Circuit emphasized in *Leon v. Berryhill* that even when each element is satisfied, the district court still has discretion to remand for further proceedings or for award of benefits. 80 F.3d 1041, 1045 (9th Cir. 2017).

Here, plaintiff asks that the Court remand for additional proceedings. Dkt. 10, at 12. The Court agrees there is ambiguity in the record concerning plaintiff's mental

health impairments and work-related limitations associated with those conditions. Remand for additional proceedings is warranted.

### III. CONCLUSION

Based on the foregoing discussion, the Court finds the ALJ erred when they determined plaintiff to be not disabled. Defendant's decision to deny benefits therefore is REVERSED and this matter is REMANDED for further administrative proceedings. The Commissioner is directed to conduct a de novo hearing and allow plaintiff to provide additional evidence of their medical conditions and work-related limitations, and in the five-step evaluation, the ALJ shall include in the hypothetical posed to the VE, and in the RFC, any work-related limitations that are supported by substantial evidence.

Dated this 23rd day of January, 2023.

*Theresa L. Fricke*
Theresa L. Fricke
United States Magistrate Judge